712 So.2d 296 (1998)
Jack MURPHY, M.D.
v.
COMMUNITY HEALTH NETWORK OF LOUISIANA, INC. et al.
No. 97-CA-258.
Court of Appeal of Louisiana, Fifth Circuit.
May 27, 1998.
Lawrence J. Smith, Lawrence J. Smith & Associates, New Orleans, Robert E. Arceneaux, Julia Symon de Kluiver, Barham & Arceneaux, New Orleans, for plaintiff-appellant.
Ewell E. Eagan, Jr., Donna Phillips Currault, Marcy V. Massengale, William T. D'Zurilla, Gordon, Arata, McCollam & Duplantis, L.L.P., New Orleans, Erroll J. King, Jr., McGlinchey Stafford Lang, Baton Rouge, for defendant-appellee.
Before GRISBAUM, C.J., and GAUDIN and CANNELLA, JJ.
GRISBAUM, Chief Judge.
The plaintiff-appellant, Jack Murphy, M.D., appeals the judgment of the trial court granting an exception of no cause of action in favor of the defendant-appellee, Community Health Network of Louisiana, Inc. (CHN). We affirm.

ISSUE
The single issue presented is whether the Employee Retirement Income Security Act *297 (ERISA) preempted plaintiff-appellant's claims under Louisiana's Any Willing Provider statute and Louisiana's Unfair Trade Practices Act.

FACTS AND PROCEDURAL HISTORY
The plaintiff, Dr. Murphy, filed suit against CHN, Community 65, RPMA, and David St. Germaine, alleging violations of Louisiana's Any Willing Provider statute and Louisiana's Unfair Trade Practices Act in that his request to become a member of RPMA and a participating provider in Community 65 were denied. The basis for his claims under the Unfair Trade Practices Act is based on CHN's alleged violations of Louisiana's Any Willing Provider statute.
Defendants filed a peremptory exception of no cause of action, claiming that plaintiff's claims are preempted by ERISA. On November 25, 1996, the trial court granted defendants' exception.
The Any Willing Provider statute was enacted as part of the Health Care Cost Control Act (the Act) by the Louisiana legislature in 1984. La. R.S. 40:2201 et seq. The Act was passed in an attempt to reduce health care costs without jeopardizing the quality of care. La. R.S. 40:2201(A). The Act specifically authorizes the formation of preferred provider organizations (PPOs), which are defined as "contractual ... agreements between a provider or providers and a group purchaser or purchasers to provide for alternative rates of payment...." La. R.S. 40:2202(5)(a) "Group purchasers" are defined under the Act as "[e]ntities which contract for the benefit of their insured, employees, or members ...." and "[e]ntities which serve as brokers for the formation of such contracts, including health care financiers, third party administrators, ... or other intermediaries." La. R.S. 40:2202(3)(a) and (b); CIGNA Healthplan of La., Inc. v. State of La., 82 F.3d 642, 645 (5th Cir.1996) (hereinafter CIGNA).
The statute also provides that "[n]o licensed provider, other than a hospital, who agrees to terms and conditions of the preferred provider contract shall be denied the right to become a preferred provider to offer health services within the limits of his license." La. R.S. 40:2202(5)(c).
CHN is a state-licensed health maintenance organization. It offers several health care programs, including a basic program and a Medicare risk product, known as Community 65. In the Community 65 program, CHN contracts with particular physicians, hospitals and physician-hospital organizations to provide Medicare services to individuals enrolled for coverage through their employer. Defendants, RPMA and Dr. David St. Germaine, are providers who contract with CHN. The plaintiff, Dr. Murphy, was and is a participating provider in the basic program offered by CHN. However, when the plaintiff expressed his willingness to participate in the Community 65 program, his request was denied.
CHN is a "group purchaser" under the terms of the Act. It is a licensed health maintenance organization (HMO) that provides prepaid health care coverage to enrolled subscribers by contracting with selected physicians, hospitals, and other health care suppliers (collectively, providers). The chosen providers agree to comply with CHN's quality and control requirements and to offer health care services at a discounted rate.
Community 65 is a Medicare risk product offered by CHN, which is purchased by employers on behalf of their employees. This product becomes the health care plan that is offered by employers who maintain employee benefit plans for their employees/retirees, i.e., ERISA-qualified plans. Community 65 is also offered by CHN to members of the general public who are eligible for Medicare.

LAW AND ANALYSIS
The Federal Fifth Circuit held that Louisiana's Any Willing Provider statute is preempted by ERISA. See CIGNA. "Section 514(a) of ERISA states that ERISA `shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan' that is covered by the federal statute." Id. at 646 (quoting 29 U.S.C.S. § 1144(a)). Further, jurisprudential guidelines tell us that this peremption clause has been interpreted broadly by the courts in an effort "`to establish ... plan regulation as exclusively a federal concern,'" *298 Id. at 647 (quoting Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 138, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990)), and that a state law relates to an ERISA plan "`in the normal sense of the phrase if it has connection with or reference to such a plan.'" Id. at 647 (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97, 103 S.Ct. 2890, 2899-2900, 77 L.Ed.2d 490 (1983) (emphasis as found in the original)). A state law, CHN relates to an ERISA plan, even if that law was not designed to affect such plans, and even if its effect is only indirect. Id. at 646. If a state law does not expressly concern employee benefit plans, it will still be preempted in particular cases. The United States Supreme Court has repeatedly held that ERISA preempts "state laws that mandate employee benefit structures or their administration." New York State Conference of Blue Cross & Blue Shield Plans, et al. v. Travelers Ins. Co., et al., 514 U.S. 645, 658, 115 S.Ct. 1671,1678, 131 L.Ed.2d 695 (1995).
It should be noted that the United States Supreme Court has placed some limits on ERISA preemption. The Supreme Court has stated that "`some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law `relates to' the plan.'" CIGNA, supra, at 647 (quoting Shaw, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21). It recently held that ERISA does not preempt state laws that have "only an indirect economic effect on the relative costs of various health insurance packages" available to ERISA-qualified plans. Id. (quoting Travelers, 514 U.S. 645, 662, 115 S.Ct. 1671, 1680, 131 L.Ed.2d 695).
Additionally, the Fifth Circuit found that the Any Willing Provider statute qualified for preemption because it both refers to and has a connection with an ERISA-qualified plan. CIGNA, supra, at 647. The court found that the Act referred to ERISA-qualified plans because it specifically states that group purchasers may include entities, such as "Taft-Hartley trusts or employers who establish or participate in self-funded trusts or programs," La. R.S. 40:2202(3)(a), which "`contract with health care providers for the benefit of their ... employees.'" "Given that these enumerated entities constitute ERISA qualified plans, the Act, and through it the Any Willing Provider statute, expressly refers to ERISA plans." Id. at 648 (footnote omitted).
The court also determined that the statute connects with ERISA plans because it mandates a certain structure, that structure being a structure that includes every willing, licensed provider. Id. at 648. The statute prohibits those ERISA plans which elect to use a PPO that does not include every willing, licensed provider. Id. The court in CIGNA went on to state that
Neither is it of any consequence that plans might not choose to offer coverage by PPOs: It is sufficient for preemption purposes that the statute eliminates the choice of one method of structuring benefits. The fact that neither CIGNA nor CGLIC is itself an ERISA plan is likewise inconsequential: By denying insurers, employers, and HMOs the right to structure their benefits in a particular manner, the statute is effectively requiring ERISA plans to purchase benefits of a particular structure when they contract with organizations like CIGNA and CGLIC. In that regard, the statute `bears indirectly but substantially on all insured plans,' and is accordingly preempted by ERISA.
Id. at 648-49 (footnotes omitted).
The Fifth Circuit followed CIGNA in Texas Pharmacy Ass'n., et al. v. Prudential Ins. Co., 105 F.3d 1035, 1037 (5th Cir.1997), in which it held that Texas' Any Willing Provider statute was preempted because it eliminated one method of structuring benefits by prohibiting plans from contracting with pharmacy networks that exclude any willing provider.
The holding in CIGNA is determinative of the factual scenario presented because it involves the same factual situation and the same statute, Louisiana's Any Willing Provider statute. The plaintiffs in CIGNA sought a declaratory judgment that the Any Willing Provider statute was preempted, because a doctor whose contract they had terminated had filed suit against them under the statute. They also had applications, which they wanted to deny. Thus, in an *299 effort to avoid further lawsuits, they sought a declaratory judgment on the issue of whether the statute was preempted. Judgment was entered in their favor.
The record shows that Dr. Murphy alleges a violation of the same statute under the same circumstances for which CIGNA sought a declaratory judgment. He alleges that the defendants-appellees have violated the Any Willing Provider statute and the Unfair Trade Practices statute due to their denial of his request to become a provider for Community 65. Appellant's claim under Louisiana's Unfair Trade Practices act is based on a violation of the Any Willing Provider statute; thus, if the Any Willing Provider statute is preempted, also is appellant's claim under the Unfair Trade Practices Act. Appellant cannot indirectly do under the Unfair Trade Practices Act that which he cannot do under the Any Willing Provider statute.
Because the Any Willing Provider statute makes reference to and is connected with ERISA, it is preempted. It is inconsequential that CHN and Community 65 are not themselves ERISA plans. CIGNA, supra, at 648. As stated in CIGNA, because it denies insurers, employers, and HMOs the right to structure their benefits in a particular manner, the statute is effectively requiring ERISA plans to purchase benefits of a particular structure when they contract with organizations like CIGNA and Connecticut General Life Insurance Company (CGLIC) and, in this case, CHN. Travelers, 514 U.S. at 658, 115 S.Ct. at 1678. Therefore, because the statutes mandate a certain structure which affects employee benefit plans, they are, accordingly, preempted.
Appellant relies heavily on the United States Supreme Court's recent decision in Travelers in which it held that ERISA does not preempt a New York statute that requires hospitals to collect surcharges from patients covered by commercial insurers, but not from patients insured by Blue Cross and Blue Shield plans. The Supreme Court stated that "an indirect influence ... does not bind administrators to any particular choice and thus does not function as a regulation of an ERISA plan itself." The Supreme Court emphasized the limited nature of this holding. CIGNA, supra, at 649; Travelers, 514 U.S. at 668, 115 S.Ct. at 1683.
The Fifth Circuit distinguished Travelers from CIGNA stating that "Unlike, the New York statute at issue in Travelers, Louisiana's Any Willing Provider statute specifically mandates that certain benefits available to ERISA plans must be constructed in a particular manner. In other words, the Louisiana statute does not merely raise the cost of the implicated benefits; it delineates their very structure." CIGNA, supra, at 649. Thus, the decision in Travelers does not save the Any Willing Provider statute from preemption nor the Unfair Trade Practices Act, in this case, because of the difference the two have in how they affect ERISA plans. The surcharges in Travelers affect the cost of benefits and the relative costs of competing insurance. Travelers, 514 U.S. at 660, 115 S.Ct. at 1679. The Any Willing Provider statute affects the administration and structure of benefit plans. The Supreme Court has held that, when state laws affect ERISA plans in this way, they are preempted. Accordingly, the Any Willing Provider statute is preempted. Travelers, 514 U.S. at 658, 115 S.Ct. at 1678. Furthermore, because appellant's claims under the Unfair Trade Practice Act are based on violations of that statute, these claims are also preempted.
Therefore, we affirm the trial court's ruling that appellant's claims are preempted. We do not address or decide any claims which appellant may have under the Unfair Trade Practices Act, which are unrelated to ERISA. All costs of this appeal are to be assessed against the appellees.
AFFIRMED.